STATE OF NORTH CAROLINA v. WILLIAM EARL THOMAS

No. 934SC1056

(Filed 15 August 1995)

**Evidence and Witnesses § 929 (NCI4th)— child sexual abuse— victim's statements to friends—friends' statements to mothers—admissibility of mothers' testimony**

The trial court erred in a prosecution for first degree sexual. offense and taking indecent liberties with a child by admitting under the excited utterance exception to the hearsay rule the testimony of the mothers of two of the victim's kindergarten classmates as to what the daughters said that the victim had said to them about what her father had done. The testimony was offered to prove that defendant committed the crimes with which he was charged and was double hearsay because there were two out-of-court statements involved. The victim's conversation with her classmates was of such a nature as to have been properly admitted under the excited utterance exception to the hearsay rule; although the precise date of the alleged assault is unclear, the trial court found that it came within a four to five day period of the incident and, in the circumstances of this case, the passage of

**STATE v. THOMAS**

[119 N.C. App. 708 (1995)]

four or five days does not detract from the "spontaneity" of the response. However, as to the statements by the classmates to their mothers, it is open to question as to whether the receipt of a communication that one's friend has been the victim of sexual assault constitutes a sufficiently startling or stressful event for purposes of the exception; and, even so, the declarations were not made in reaction to the central event, nor did either child witness or participate in the alleged abuse; in neither instance was the child's statement to her mother made under the influence of apparent distress caused by receipt of the information; and the remarks of the classmates to their mothers appear to be of narrative rather than instinctive character and would not have been admissible as part of the *res gestae*, the precursor to the "excited utterance" exception. Given the substantial importance of the testimony as the only direct evidence pointing to defendant's guilt, the error was prejudicial. It was noted that the trial court's analysis and findings herein were directed at the excited utterance exception and not the special requirements of N.C.G.S. § 8C-1, Rule 803(24).

**Am Jur 2d, Evidence § 865.**

**Time element as affecting admissibility of statement or complaint made by victim of sex crime as res gestae, spontaneous exclamation, or excited utterance. 89 ALR3d 102.**

**Necessity, in criminal prosecution, of independent evidence of principal act to allow admission, under res gestae or excited utterance exception to hearsay rule, of statement made at time of, or subsequent to, principal act. 38 ALR4th 1237.**

**When is hearsay statement an "excited utterance" admissible under Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed. 451.**

Appeal by defendant from judgment entered 20 April 1993 by Judge William C. Gore, Jr. in Jones County Superior Court. Heard in the Court of Appeals 23 August 1994.

*Attorney General Michael F. Easley, by Senior Deputy Attorney General Wanda G. Bryant, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defenders Mark D. Montgomery and Gordon Widenhouse, for defendant-appellant.*

JOHN, Judge.

Defendant appeals convictions on two counts of first degree sexual offense (by anal and genital penetration) and one count of taking indecent liberties with a minor child. By judgment entered 20 April 1993, the trial court imposed concurrent sentences of life imprisonment on the first degree sexual offense counts and the presumptive three-year sentence on the indecent liberties charge, also to run concurrently.

In his appellate brief, defendant brings forth seven assignments of error for our consideration, six of which concern evidentiary rulings made by the court. In particular, defendant maintains the court erred to his prejudice by allowing the testimony of Teresa Meadows (Meadows) and Angela Eubanks (Eubanks) under the "excited utterance" exception to the hearsay rule, thereby entitling him to a new trial. As we agree with this contention, we do not address defendant's remaining arguments.

In pertinent part, the evidence at trial tended to show the following: In the fall of 1990, Meadows' daughter L. attended the same kindergarten class as A. (defendant's five-year-old daughter, the alleged victim), and the two girls were good friends. According to Meadows, on the Wednesday evening after Thanksgiving 1990, L. was "moping around" instead of being her normal "active" self. When Meadows asked L. if she was sick, the latter replied that "she had something on her mind." Upon further questioning by her mother, L. related that A. was crying earlier that day on the playground because her "pee pee hurt." When L. had asked A. what was wrong, A. explained that her father, defendant herein, had "got drunk over the weekend and was playing with her pee pee." L. also informed her mother that A. had exacted a promise from L. and another friend B. not to reveal to anyone what they had heard. Nevertheless, upon the suggestion of the girls' kindergarten teacher, Meadows subsequently reported the details of L.'s account to the Jones County Department of Social Services (DSS). When Meadows asked L. about the incident shortly before trial, however, the latter did not remember it.

Eubanks testified that her five-year-old daughter B. was also in A.'s kindergarten class. According to Eubanks, as she was putting B. to bed the Wednesday night after Thanksgiving 1990, B. told her A. had said her parents were getting a divorce. B. was "not upset or anything," but "seemed to be concerned." Eubanks attempted to reassure her daughter, whereupon B. further related that A. had mentioned her

father had been drinking a lot recently and that "over the holidays . . . he had gotten drunk and played with her private parts." Eubanks testified that she advised B. to tell A. to report the matter to their kindergarten teacher. When B. came home from school the next day, however, she told her mother A. had not spoken with the teacher because she was afraid. Eubanks observed that when reporting A.'s inaction, B. "was not upset." At that point, Eubanks herself called the teacher and later contacted DSS as well. Eubanks did not discuss the matter further with her daughter and believed at trial that "with the time frame . . . she wouldn't remember."

A. did not testify at trial, nor did either of her two kindergarten classmates.

Defendant's initial assignment of error is directed at the testimony of Meadows and Eubanks. He argues evidence elicited from each consisted of "double hearsay" not falling within the "excited utterance" hearsay exception, and that its admission constituted prejudicial error. We agree.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c) (1992). Any such statement is "inadmissible except as provided by statute or the rules of evidence." *State v. Rogers*, 109 N.C. App. 491, 498, 428 S.E.2d 220, 224, *disc. review denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 128 L. Ed. 2d 54, *reh'g denied*, 128 L. Ed. 2d 495 (1994); *see also* N.C.R. Evid. 802 (1992).

In the case *sub judice*, the challenged testimony by Meadows and Eubanks was offered to prove that defendant committed the crimes with which he was charged. With respect to the presentation by each woman, there were *two* out-of-court assertions involved—that is, A.'s comments to L. and B., and the subsequent statements L. and B. made to their respective mothers. Because in each instance the

out-of-court statements [were] offered for the truth of the matter, . . . this is a double hearsay situation. Each statement, therefore, must fall within an exception to the hearsay rule in order to [have] be[en] admissible.

*State v. Perry*, 54 N.C. App. 479, 481, 283 S.E.2d 569, 571 (1981) (citation omitted).

The trial court proceeded in a most conscientious and thorough manner. After conducting an extensive *voir dire* hearing into the circumstances surrounding A.'s statement to L. and B. and each child's respective report thereafter to her mother, it recited detailed findings in support of its decision to allow the challenged testimony under the "excited utterance" exception to the hearsay rule. *See* N.C.R. Evid. 803(2) (1992). Pertinent particulars of the trial court's rulings will be included herein as necessary.

I.

We first consider A.'s conversation with L. and B. As noted above, on the Wednesday following Thanksgiving 1990, L. and B. discovered A. in tears on the playground at kindergarten. Because they were concerned about A.'s distress, the girls inquired of her what was wrong. A. related that her father had gotten drunk over the weekend and "play[ed] with her pee pee" or "played with her private parts." The trial court specifically found that A.'s statement to L. and B. was a spontaneous response to their questions, made while A. was under "obvious distress" precipitated by events which occurred "within a four to five day period at most." Reasoning that a child of five "is characteristic[ally] free of conscious fabrication for longer periods [of time] including . . . four or five days," the court concluded that A.'s assertions to L. and B. fell within the excited utterance exception to the hearsay rule. *See* Rule 803(2).

Rule 803(2) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (2) Excited Utterance.—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

It is well-established that in order for an assertion to come within the parameters of this particular exception, "there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985) (citation omitted). While the period of time between the event and the statement is without doubt a relevant factor, the element of time is not always material. *State v. Deck*, 285 N.C. 209, 213-14, 203 S.E.2d

830, 833-34 (1974). " '[T]he modern trend is to consider whether the delay in making the statement provided an opportunity to manufacture or fabricate the statement.' " *Smith*, 315 N.C. at 87, 337 S.E.2d at 841 (quoting with approval J. Bulkley, *Evidentiary Theories for Admitting a Child's Out-of-Court Statement of Sexual Abuse at Trial*, Child Sexual Abuse and the Law 153, 155 (1983)).

In addition, the requirements of a sufficiently stressful event and of spontaneity entail subjective standards. *Rogers*, 109 N.C. App. at 501, 428 S.E.2d at 226. For example,

> [w]ith regard to statements made by young children, our Courts have adopted "a broad and liberal interpretation [of the requirements of Rule 803(2)]," and in doing so recognize that "the stress and spontaneity upon which the exception is based is often present for longer periods of time in young children than in adults."

*Id.* (quoting *Smith*, 315 N.C. at 87, 337 S.E.2d at 841). Further,

> "This ascertainment of prolonged stress is born of three observations. First, a child is apt to repress the incident. Second, it is often unlikely that a child will report this kind of incident to anyone but the mother. Third, the characteristics of young children work to produce declarations 'free of conscious fabrication' for a longer period after the incident than with adults."

*Smith*, 315 N.C. at 87-88, 337 S.E.2d at 841 (quoting *State v. Padilla*, 329 N.W.2d 263, 266 (Wis. Ct. App. 1982)).

We hold the victim's conversation with L. and B. on the playground was of such a nature as to have been properly admitted under the excited utterance exception to the hearsay rule. Although the precise date of the alleged assault is unclear from the record, A. told her friends on the Wednesday after Thanksgiving that it occurred sometime during the previous weekend. As the trial court found, therefore, A.'s statement on the playground came "within a four to five day period at most" of the incident of which she spoke. In the circumstances of this case, we do not believe the passage of four or five days detracts from the "spontaneity" of A.'s response. *See Smith*, 315 N.C. at 90, 337 S.E.2d at 843 (child's statement to her grandmother between two and three days of being sexually abused held admissible under the excited utterance exception to the hearsay rule); *see also Rogers*, 109 N.C. App. at 501, 428 S.E.2d at 226 (five-year-old told a playmate's mother she was sexually abused three days after the event); *see also State v. Jones*, 89 N.C. App. 584, 595, 367 S.E.2d 139,

146 (1988) (statement of victim within ten hours of time she left her abuser's custody).

Nor do we agree with defendant's suggestion that because A.'s comments were made in response to questions posed by her friends, they necessarily lacked spontaneity. *See State v. Murphy*, 321 N.C. 72, 77, 361 S.E.2d 745, 748 (1987) ("The fact that the victim spoke in response to a question does not defeat the trustworthiness of her utterance.") (citation omitted); *but see Rogers*, 109 N.C. App. at 501, 428 S.E.2d at 226 (circumstance that child's statements "not in response to any questioning on the part of the *adult* to whom they were made" a factor in determining admissibility) (emphasis added).

Significantly, A. was crying and obviously upset when she confided in her little friends, an emotional state indicating she remained "under the . . . stress caused by the event" at the time of her statement. *State v. Jolly*, 332 N.C. 351, 360, 420 S.E.2d 661, 667 (1992). In addition, the infliction of sexual abuse upon a five-year-old child by a parent indisputably constitutes a "sufficiently startling experience" for purposes of the exception. *See Rogers*, 109 N.C. App. at 501, 428 S.E.2d at 226.

Accordingly, although A.'s out-of-court statements to L. and B. were offered to prove the truth of the matter asserted (i.e, that A. had been sexually abused by defendant), we hold the trial court properly concluded that the *first level* of the "double hearsay" testimony at issue fell within the excited utterance exception to the hearsay rule.

## II.

We are faced with a more troubling circumstance, however, when considering the *second level* of hearsay contained in the testimony of Meadows and Eubanks, that is, the statements made by L. and B. to their mothers.

Of the factors noted above—occurrence of a stressful event, passage of time between the event and statement, emotional state indicating declarant remained under stress of the event, and whether the statement came in response to interrogation, especially of a child by an adult—to be considered in ruling upon an "excited utterance," only the temporal aspect of the second hearsay level compares favorably with the first in terms of admissibility. *See Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir. 1988) (recitation of factors to be considered in determining whether statement was offered while declarant remained under the stress of the startling event).

First, it is at a minimum open to question whether receipt of a communication that one's friend has been the victim of sexual abuse (as opposed to being victimized oneself), while no doubt a shocking or disturbing revelation, constitutes a sufficiently startling or stressful event for purposes of the exception. *See, e.g., State v. Wingard*, 317 N.C. 590, 597-99, 346 S.E.2d 638, 643-44 (1986) (immediately after seeing defendant shoot a woman in the head, and while defendant remained bent over her holding the gun, out-of-court declarant made a statement which was overheard by others); *see also State v. Kerley*, 87 N.C. App. 240, 241-43, 360 S.E.2d 464, 465-66 (1987) (between eight and fifteen minutes after the mattress upon which he was sleeping was intentionally set afire, out-of-court declarant escaped from a burning building and gave a statement to responding officers), *disc. review denied, appeal dismissed*, 321 N.C. 476, 364 S.E.2d 661 (1988); *see also Murphy*, 321 N.C. at 76-77, 361 S.E.2d at 747-48 (out-of-court declarant told a policeman a man had entered her home and raped her approximately ten minutes after the alleged attack occurred). Moreover, B.'s first declaration to her mother, arguably the matter uppermost in her mind, was that A.'s parents were getting a divorce, not that A. had revealed sexual abuse by her father.

In this context, we also note authority requiring that the stressful event giving rise to the excited utterance exception of Rule 803(2) must "relate to the main event," *State v. Jones*, 362 S.E.2d 330, 333 (W. Va. 1987), or "lie at the heart of the suit." *See* 4 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence*, § 435 (2d ed. 1994); *see also Jones*, 362 S.E.2d at 333 (an admissible excited utterance must have been made by "one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.") (citation omitted). The declarations of L. and B. to Meadows and Eubanks were not made in reaction to the central event at issue herein, that is, the alleged sexual abuse of A., nor did either child witness or participate in that alleged abuse. Under the reasoning adopted by the foregoing authorities, therefore, the statements of the two girls could not qualify as excited utterances. However, while such prerequisites for admissibility may have merit, our decision herein need not be grounded upon this analysis.

Next, assuming *arguendo* that the passage of several hours between the receipt of A.'s revelation by L. and B. and their subsequent reports to their mothers was insufficient to dilute the spontaneity of the children's comments, we consider the emotional state of L. and B. during the conversations at issue. In neither instance was

the child's statement to her mother made under the influence of apparent distress caused by receipt of the information. Neither child was crying or appeared emotionally moved. L. was described by her mother as "moping around" and explained simply that she had something on her mind. Meadows did not relate any trauma involved on the part of L. in recounting what was "on her mind." According to Eubanks, B. seemed "concerned," but "not upset," when she volunteered to her mother during their customary nighttime conversation that A.'s parents were getting a divorce and that A. had stated her father had "gotten drunk and played with her private parts."

By contrast, A. was crying and visibly disturbed at the time of her statement to her friends. *See, e.g., Jolly,* 332 N.C. at 360, 420 S.E.2d at 667 (out-of-court declarant was "crying quite a bit, very upset[;] [h]ysterical."); *see also Murphy,* 321 N.C. at 77, 361 S.E.2d at 748 (out-of-court declarant was "crying and extremely upset" when she gave a statement); *see also Kerley,* 87 N.C. App. at 243, 360 S.E.2d at 466 (out-of-court declarant was "very upset and excited" and a police officer "had to tell him to calm down and take a minute" before he made a statement).

Additionally, in the case of L., she spoke of the incidents on the playground only in response to her mother's questioning whether she was sick. *See Rogers,* 109 N.C. App. at 501, 428 S.E.2d at 226.

Finally, we note that the excited utterance exception to the hearsay rule is a codification of the common law exception of "spontaneous utterance." *Wingard,* 317 N.C. at 598, 346 S.E.2d at 644 (citation omitted). Pre-Rule cases used the term *res gestae,* meaning "things done," to describe spontaneous utterances. *See* 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 221 at 102-05 (4th ed. 1993). Under the *res gestae* rule, a statement made spontaneously and concurrently with an incident carries with it an inherent degree of credibility and will be admissible as a hearsay exception because of its spontaneous nature. *See Carroll v. Guffey,* 156 N.E.2d 267, 270 (Ill. Ct. App. 1959). In other words, " '[a] statement made as part of the *res gestae* does not **narrate** a past event, but it is the event speaking through the person and therefore . . . precludes the idea of design.' " *State v. Rinck,* 303 N.C. 551, 570, 280 S.E.2d 912, 925 (1981) (emphasis added) (quoting *State v. Connley,* 295 N.C. 327, 342, 245 S.E.2d 663, 672 (1978), *vacated on other grounds,* 441 U.S. 929, 60 L. Ed. 2d 657 (1979)).

Three requirements were established for admissibility as part of the *res gestae*:

> (a) The declaration must be of such spontaneous character as to be a sufficient safeguard of its trustworthiness; that is, preclude the likelihood of reflection and fabrication; *instinctive rather than narrative*; (b) it must be contemporaneous with the transaction, or so closely connected with the main fact as to be practically inseparable therefrom; and (c) must have some relevancy to the fact sought to be proved.

*Little v. Brake Co.*, 255 N.C. 451, 455-56, 121 S.E.2d 889, 891-92 (1961) (emphasis added) (citations omitted).

"Closely scrutinized," *see Brantley v. State*, 338 S.E.2d 694, 696 (Ga. Ct. App. 1985), the remarks of L. and B. to their mothers appear to be of "narrative" rather than "instinctive" character. L. was described by her mother as "moping around" and acting as if something was on her mind, prompting Meadows' inquiry into what was troubling her; B.'s mother recalled her daughter seemed "concerned." The conversation between each girl and her mother was in the nature of reporting the day's events. L. related what she heard that day after questioning by her mother, and B. recounted her conversation with A. during a routine mother-daughter talk before bedtime. The girls' statements would thus not have been admissible as part of the *res gestae*, the precursor to the "excited utterance" exception. *See, e.g., Cannon v. State*, 623 S.W.2d 412, 413-14 (Tex. Crim. App. 1981) (testimony of neighbor recounting statement to her by victim's mother (defendant's wife) of defendant's inculpatory remarks made twenty-four hours prior to conversation between neighbor and victim's mother constituted double hearsay not within either excited utterance or *res gestae* exceptions to hearsay rule).

Based on the foregoing, we hold the statements of out-of-court declarants L. and B. to their mothers—the *second level* of hearsay contained in the testimony of Meadows and Eubanks—do not fall within the "excited utterance" exception to the hearsay rule. Accordingly, admission of those statements into evidence as "excited utterances" was improper.

### III.

Although the "[e]rroneous admission of hearsay . . . evidence . . . is not always so prejudicial as to require a new trial," *State v. Sills*, 311 N.C. 370, 378, 317 S.E.2d 379, 384 (1984) (citations omitted), given

STATE v. THOMAS

[119 N.C. App. 708 (1995)]

the substantive importance of the testimony of Meadows and Eubanks as the only direct evidence pointing to defendant's guilt, such error was indeed prejudicial to defendant's case. Accordingly, we must award a new trial. *State v. Milby and State v. Boyd*, 302 N.C. 137, 142, 273 S.E.2d 716, 720 (1981) ("The test for prejudicial error is whether there is a reasonable possibility that the evidence complained of contributed to the conviction . . . .")

We note in closing that during oral argument before this Court, counsel expressed the opinion that the hearsay statements of L. and B. to their mothers may have been admissible under the "catch-all" hearsay exception. *See* N.C.R. Evid. 803(24) (1992); *see also* Susan K. Datesman, *State v. Smith: Facilitating the Admissibility of Hearsay Statements in Child Sexual Abuse Cases*, 64 N.C.L. Rev. 1352 (1986). While the prosecutor at the *voir dire* hearing in the trial court suggested the evidence might be admissible under Rule 803(24), the State may seek admission of testimony pursuant to this exception only if it:

gives written notice stating [its] intention to offer the statement and the particulars of it . . . to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

*See* Rule 803(24). No such notice appears of record herein. *See In re Hayden*, 96 N.C. App. 77, 82, 384 S.E.2d 558, 561 (1989) (testimony properly excluded when record discloses notice requirement not satisfied).

Because the trial court did not admit the evidence under Rule 803(24) and the State does not argue this position in its brief, moreover, the feasibility of this particular exception is not presented for our review. *See* N.C.R. App. P. 28(a); *see also Smith*, 315 N.C. at 90, 337 S.E.2d at 843. In any event, admissibility of evidence under the "catch-all" exception is proper only after the trial court undertakes a particularized analysis and thereafter "enter[s] appropriate statements, rationale, or findings of fact and conclusions of law . . . in the record to support his discretionary decision . . . ." *Id.* at 97, 337 S.E.2d at 847. While extensive, the trial court's analysis and findings herein were directed at the excited utterance exception and not the special requirements of Rule 803(24). *See id.* at 90-98, 337 S.E.2d at 843-48.

Because of our disposition of this matter, we decline to address defendant's remaining assignments of error (relating primarily to certain evidentiary rulings made by the court). *See Akzona, Inc. v.*

*Southern Railway Co.*, 314 N.C. 488, 497-98, 334 S.E.2d 759, 765 (1985). "Our trial judges are eminently capable of ruling on evidentiary issues. We feel it is proper to defer these matters to the trial judge who presides over the continuation of this case." *Id.* at 498, 334 S.E.2d at 765.

New trial.

Judges GREENE and MARTIN, Mark D. concur.