STATE OF NORTH CAROLINA v. DONALD DEE LOWE

No. COA02-154

(Filed 17 December 2002)

**1. Sentencing— prior record level—method of proof**

There was no authority for defendant's contention that the State must produce a certified copy of the record of a prior conviction if defendant objects to the evidence used to establish the record. By statute, prior convictions may be proven by any method found to be reliable; moreover, defendant had sufficient points for the record level even without this conviction.

**2. Evidence— hearsay—excited utterance—child assault victim—statement to detective hours later**

There was no error in an assault prosecution in admitting as an excited utterance a statement given by a child who had been struck by his father with a pool cue where the statement was given at a hospital several hours after the attack. Children may react to startling experiences well after the events take place, and statements in response to a question do not necessarily lack spontaneity.

**3. Evidence— hearsay—child's statement—excited utterance—no showing that child unavailable**

The trial court did not err in an assault prosecution by admitting the child-victim's statement to a detective as an excited utterance without a showing that the child was unavailable and without the findings required for the residual exception.

**4. Assault; Child Abuse and Neglect— serious injury—serious physical injury—sufficiency of evidence**

Defendant was properly convicted of two counts of assault with a deadly weapon inflicting serious injury under N.C.G.S. § 14-32(b) and one count of felonious child abuse inflicting serious physical injury under N.C.G.S. § 14-318.4 without evidence of serious bodily injury as defined in N.C.G.S. § 14-32.4 because

STATE v. LOWE

[154 N.C. App. 607 (2002)]

"serious bodily injury" requires proof of a more severe injury than that required for "serious injury" and "serious physical injury" in the statutes under which defendant was convicted, and the injuries suffered by all the victims clearly fell within the realm of injuries contemplated by the applicable statutes.

Appeal by defendant from judgment entered 26 September 2001 by Judge David Q. Labarre in Chatham County Superior Court. Heard in the Court of Appeals 17 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Anne Goco Kirby, for the State.*

*John T. Hall, for defendant-appellant.*

CAMPBELL, Judge.

On 6 March 2001, Donald Lowe ("defendant") was charged with felonious child abuse of his son, Joshua Lowe ("Joshua"), assault with a deadly weapon inflicting serious injury on James Hendricks and assault with a deadly weapon inflicting serious injury on Nannie Hendricks. On 6 April 2001, defendant was indicted on these offenses and additionally charged with assault on a female and assault on a law enforcement officer. On 25 September 2001 these cases were tried before Chatham County Superior Court Criminal Session and the jury found defendant guilty on all charges. Defendant then appeared 3 December 2001 before Judge Gregory Weeks for correction of his sentence. On appeal, defendant assigns error to the following actions of the trial court: I. Sentencing defendant at a prior conviction level II; II. Overruling defendant's objection to admission of Joshua's out-of-court statement as an "excited utterance;" and III. Denying defendant's motion to dismiss the allegations of inflicting serious injury in the assault charges in 01 CRS 1061, 1062 and 1064 due to the insufficiency of the evidence. By appealing, defendant seeks dismissal of the charges due to the insufficiency of the evidence, or alternatively, a new trial due to improperly admitted evidence or a new sentencing hearing. We hold that the evidence was sufficient to convict defendant on the charges against him and that all the evidence was properly admitted. We find no error in the trial court's rulings and therefore, we affirm.

The State's evidence showed that in the early morning of 6 March 2001, defendant began hitting, choking and kicking Melinda Phillips ("Melinda"), the mother of defendant's children. While defendant had

Melinda down on the floor choking her, their three children entered the room and started hitting defendant to get him off of their mother. Joshua, nine years old at the time, hit defendant on his back with a pool stick, causing the stick to break. Melinda ran out of the house and told the children to run. Cassie, eight years old, ran across the street to James and Nannie Hendricks' home. The Hendricks woke up when they heard Cassie enter and say, "Please help me. My daddy is beating my momma." Then defendant entered the Hendricks' home wielding the broken pool stick and threatened to kill them all. He hit James Hendricks in the head with the stick and Nannie in the nose with it and then he hit his son Joshua, who was standing in the doorway, in the head, causing a large laceration. Defendant later picked Joshua up and carried him to his grandmother's house and Joshua's uncle took him to the hospital.

As defendant's foremost request is that we dismiss his convictions, we apply the standard of review for a motion to dismiss. As recently stated by this Court:

> When ruling on a defendant's motion to dismiss a criminal action, " 'the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied.' " *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982) (citation omitted). Whether the evidence presented is substantial is a question of law for the court. (citation omitted). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). " 'If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed.' " *Earnhardt*, 307 N.C. at 66, 296 S.E.2d at 652 (citation omitted).

*State v. Siriguanico*, 151 N.C. App. 107, 564 S.E.2d 301 (2002).

I. Prior record level II

[1] Defendant first assigns error to the trial court's sentencing him at a prior conviction level II. At the sentencing hearing, the State submitted a prior criminal record to the court and proposed that defendant be considered a level II for sentencing purposes. Thereupon, defendant's trial counsel told the court, "[M]y client does raise some

issue with respect to the Rowan County matter. He just doesn't seem to recall that situation." Defendant's counsel, however, did not object to defendant having a prior record level II status. Defendant argues that an objection concerning *the evidence* of his prior criminal record demands a certified copy before the sentencing court may properly consider it. We disagree. Prior convictions can be proven by: "(1) Stipulation of the parties. (2) An original or copy of the court record of the prior conviction. (3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts. (4) Any other method found by the court to be reliable." N.C. Gen. Stat. § 15A-1340.14(f)(1)-(4) (2001). The trial transcript shows that the State submitted to the court a prior criminal record and that the court considered the record to be reliable. In *State v. Rich*, the defendant argued that the trial court erred "by accepting the State's offer of 'an unverified computerized printout not under seal' to prove defendant's prior criminal convictions." *State v. Rich*, 130 N.C. App. 113, 115, 502 S.E.2d 49, 51 (1998). This Court held that "[t]he computerized record contained sufficient identifying information with respect to defendant to give it the indicia of reliability." *Id.* at 116, 502 S.E.2d at 51. As was the case in *Rich*, the defendant here submitted no authority for his contention that the State must produce a certified copy of the prior conviction if defendant objects to the evidence used to establish his prior criminal record. The statute is clear that the court may use "[a]ny . . . method found by the court to be reliable." N.C. Gen. Stat. § 15A-1340.14(f)(4) (2001). Therefore, we defer to the trial court's finding that the criminal record submitted by the State contained sufficient evidence "to give it the indicia of reliability." *Rich* at 116, 502 S.E.2d at 51.

Under the Structured Sentencing provisions of the Criminal Procedure Act, the prior record level for felony sentencing is to be determined by N.C. Gen. Stat. § 15A-1340.14, which provides that a felony offender's prior record level is determined by calculating the sum of the offender's prior conviction points. The offender receives one point for each prior misdemeanor that falls under the statute and the offender's level is determined by his total number of points. For a prior record "Level II," the offender must have "[a]t least 1, but not more than 4 points." N.C. Gen. Stat. § 15A-1340.14(c)(2) (2001). Defendant had a total of three prior points and therefore, even without the "Rowan County matter," which was a conviction for driving under the influence of drugs, defendant would have still had two points. Thus, it would have been harmless error to include a point for

the offense that defendant "just doesn't seem to recall," since only one point is needed to be a level II. *See State v. Smith*, 139 N.C. App. 209, 533 S.E.2d 518 (2000), *appeal dismissed*, 353 N.C. 277, 546 S.E.2d 391 (2000).

## II. Admission of Joshua's out-of-court statement

[2] Defendant next assigns error to the trial court's overruling defendant's objection to the admission of Joshua's hearsay statement as an "excited utterance" through the testimony of Detective Perry, who interviewed Joshua at the hospital. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2001). Under Rule 803(2) of the North Carolina Rules of Evidence, hearsay that fits the requirements of an excited utterance is admissible as an exception to the general rule against hearsay. For a statement to fall within the excited utterance exception, there must be: " '(1) a sufficiently startling experience suspending reflective thought and (2) a sponta- neous reaction, not one resulting from reflection or fabrication.' " *State v. Wright*, 151 N.C. App. 493, 496, 566 S.E.2d 151, 154 (2002) (quoting *State v. Maness*, 321 N.C. 454, 459, 364 S.E.2d 349, 351 (1988) (citation omitted)). Further, our Supreme Court has been more lenient with respect to the passage of time between the two essential elements of an excited utterance in cases involving statements made by children. By doing so, it has recognized that "the *stress and spon- taneity* upon which the [excited utterance] exception [to the hearsay rule] is based is often present for longer periods of time in young chil- dren than in adults." *State v. Smith*, 315 N.C. 76, 87, 337 S.E.2d 833, 841 (1985) (emphasis added). The statement, therefore, does not have to be contemporaneous with the startling event, but, as the *Smith* Court held, "[s]pontaneity and stress are the crucial factors." *Smith* at 88, 337 S.E.2d 842.

In the case *sub judice*, the statement in dispute is the one made by Joshua to Detective Perry at the hospital after the incident in which defendant hit Joshua with a pool stick. Joshua did not tes- tify at trial. Detective Perry testified that Joshua told him "that his dad and mom . . . were fighting, and when he went in that [his dad] was hitting his mom. . . . [And] when his dad entered Nannie's resi- dence, . . . he hit James and Nannie with the pool stick and then turned and hit [Joshua] with the pool stick." Prior to this testimony being allowed, defense counsel objected, upon which a bench con- ference was held off the record, and the jury was excused temporar-

ily. During the proceedings outside the jury's presence, the court decided that this case falls within the excited utterance exception under *State v. Thomas*, in which this Court held that the trial court properly admitted, as an excited utterance, hearsay testimony regarding a five-year-old victim's conversation with her classmates four to five days after the incident in which she was sexually abused by her father. The trial court in that case:

> [S]pecifically found that A.'s statement to L. and B. was a spontaneous response to their questions, made while A. was under "obvious distress" precipitated by events which occurred "within a four to five day period at most." Reasoning that a child of five "is characteristic[ally] free of conscious fabrication for longer periods [of time] including . . . four or five days, the court concluded that A.'s assertions to L. and B. fell within the excited utterance exception to the hearsay rule."

*State v. Thomas*, 119 N.C. App. 708, 712, 460 S.E.2d 349, 352 (1995). Upon reviewing the trial court's findings, this Court held:

> [T]he victim's conversation with L. and B. on the playground was of such a nature as to have been properly admitted under the excited utterance exception to the hearsay rule. Although the precise date of the alleged assault is unclear from the record, A. told her friends on the Wednesday after Thanksgiving that it occurred sometime during the previous weekend. As the trial court found, therefore, A.'s statement on the playground came "within a four to five day period at most" of the incident of which she spoke. In the circumstances of this case, we do not believe the passage of four or five days detracts from the "spontaneity" of A.'s response.

*Id.* at 713, 460 S.E.2d at 353. In the case before us, Joshua's statement to Detective Perry occurred several hours after the incident in which defendant was fighting with Joshua's mother, assaulted the Hendricks and hit Joshua with a pool stick. As our extensive case law on this issue supports the proposition that children may spontaneously react to startling experiences well after the events took place, we hold that the trial court was correct in finding that Joshua's statement to Detective Perry falls within the excited utterance exception. Further, our case law is clear that statements made in response to a posed question do not necessarily lack spontaneity. *See State v. Murphy*, 321 N.C. 72, 77, 361 S.E.2d 745, 748 (1987). Therefore, the fact that

Joshua's statement was prompted by Detective Perry asking him what had happened, does not infer that Joshua may have made a statement as a result of "reflection or fabrication." *Smith* at 86, 337 S.E.2d at 841. As the State argued and the trial court held, Joshua "was still in an excited state when he got to the UNC ER. . . . [And] he [was] still suffering from the traumatic events of the morning and the passage of a couple of hours would not detract from the spontaneity of the statements he gave to Officer Perry when interviewed."

Additionally, defendant argues that the cases used to support the latitude given the time factor in cases where spontaneous statements were uttered by children are distinguishable from this case because Joshua did not witness a death or experience a sexual trauma. We find that this argument has no merit, as witnessing one's father cause serious physical injury to one's mother, friends and oneself is certainly a sufficiently traumatic experience for a child, to support this same latitude being given to the time span between the incident and the utterance.

**[3]** Moreover, Deputy Perry's testimony as to Joshua's statement was admissible as an exception to the rule against hearsay. Defendant argues that since the State did not call Joshua to testify, he became an unavailable witness; thus, pursuant to Rule 804(b)(5), the trial court must make findings that Joshua was unavailable as a witness. Upon doing so, the court, defendant argues, must follow the six steps set out in *Smith* to determine if hearsay testimony is admissible under the "residual" exception to the hearsay rule in Rule 803(24). On the contrary, we find that the trial court did not err in not making findings that Joshua was unavailable because Joshua's hearsay statement falls within the excited utterance exception. When hearsay evidence comes within a firmly rooted hearsay exception, unlike the "residual" or "catchall" exception of 803(24), "the Confrontation Clause of the North Carolina Constitution is not violated, even though no particularized showing is made as to the necessity for using such hearsay or as to its reliability or trustworthiness." *State v. Jackson*, 348 N.C. 644, 654, 503 S.E.2d 101, 107 (1998). Reversing this Court's initial holding in *Jackson*, our state Supreme Court held upon review of the case that the availability of a hearsay declarant does not preclude the admission of hearsay evidence under the "state of mind" exception in Rule 803(3). In *State v. Washington*, this Court applied the *Jackson* holding to affirm the admission of hearsay evidence under the excited utterance exception, which is at issue in the case before us. *State v. Washington*, 131 N.C. App. 156, 161-62, 506 S.E.2d 283,

287-88 (1988), *cert. denied*, 352 N.C. 362, 544 S.E.2d 562 (2000). Thus, the trial court did not err by admitting the hearsay evidence as an excited utterance under Rule 803(2) without any showing that Joshua was unavailable and without making any findings required under the residual exception.

### III. Assault with a deadly weapon inflicting "serious injury"

**[4]** Finally, defendant argues that the trial court erred in denying his motion to dismiss the charges of assault with a deadly weapon inflicting serious injury due to insufficient evidence. Defendant was convicted of the charges in 01 CRS 1061 of felonious child abuse inflicting serious injury under N.C. Gen. Stat. § 14-318.4 and in 01 CRS 1062 and 1064 of assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b). Defendant argues that under N.C. Gen. Stat. § 14-32.4, there is insufficient evidence to find him guilty of "serious bodily injury," as defined by that statute. Defendant, however, was not convicted under that statute and his argument is without merit. Prior to defining "serious bodily injury," § 14-32.4 states, "Unless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts serious bodily injury is guilty of a Class F felony." N.C. Gen. Stat. § 14-32.4 (2001). Because defendant's conduct was covered under statutes providing that he is guilty of a Class E felony, a greater punishment than Class F, the definition of "serious bodily injury" in § 14-32.4 does not apply.

First, under § 14-32(b), the elements of assault with a deadly weapon inflicting serious injury are: an assault, with a deadly weapon, inflicting *serious injury*, and not resulting in death. *State v. Uvalle*, 151 N.C. App. 446, 565 S.E.2d 727 (2002) (emphasis added) (citation omitted). Secondly, to prove felony child abuse under N.C. Gen. Stat. § 14-318.4, the State must show that "[a] parent or any other person providing care to or supervision of a child less than 16 years of age . . . intentionally inflict[ed] any *serious physical injury* upon or to the child or . . . intentionally commit[ted] an assault upon the child which result[ed] in any *serious physical injury* to the child[.]" N.C. Gen. Stat. § 14-318.4(a) (2001) (emphasis added).

By our recent holding that "assault inflicting *serious bodily injury* [under G.S. § 14-32.4] . . . is not a lesser-included offense of assault with a deadly weapon with intent to kill and inflict *serious injury* [under G.S. § 14-32(a)]" this Court has recognized that the definition of "serious bodily injury" in G.S. § 14-32.4 does not apply to the

STATE v. LOWE

[154 N.C. App. 607 (2002)]

term "serious injury" under G.S. § 14-32(a) or (b). *State v. Hannah*, 149 N.C. App. 713, 716, 563 S.E.2d 1, 3 (2002), *review denied*, 355 N.C. 754, 566 S.E.2d 81 (2002). Furthermore, the *Hannah* Court stated, "Our Courts have declined to define "serious injury" for purposes of assault prosecutions, other than stating that " '[t]he injury must be serious but it must fall short of causing death' and that '[f]urther definition seems neither wise nor desirable.' " *Hannah* at 718, 563 S.E.2d at 4 (quoting *State v. Ramseur*, 338 N.C. 502, 507, 450 S.E.2d 467, 471 (1994)). By enacting a statute in 1997 to cover "assault inflicting serious bodily injury," the legislature clearly intended to create a separate offense which has been found to require "proof of more severe injury than the element of 'serious injury[.]' " *Hannah* at 719, 563 S.E.2d at 5; *see also* N.C.G.S. § 14-32.4 (2001). We agree with the *Hannah* Court that upon "review of the relevant statutes and case law, we conclude that "serious bodily injury" requires proof of more severe injury than the "serious injury" element of the indicted offense." *Hannah* at 717, 563 S.E.2d at 4 (citation omitted).

In addition, the definition of "serious bodily injury" in G.S. § 14-32.4 does not apply to "serious physical injury" in G.S. § 14-318.4(a), under which defendant was found guilty of felonious child abuse, a Class E felony. In fact, G.S. § 14-318.4(a3) provides a separate offense of felonious child abuse if a parent, care provider or supervisor "intentionally inflicts any *serious bodily injury* to the child or who intentionally commits an assault upon the child which results in any *serious bodily injury* to the child." N.C. Gen. Stat. § 14-318.4(a3) (2001) (emphasis added). The statute goes on to define "serious bodily injury" and holds that violation of this statute is a Class C felony. Moreover, the definition of "serious bodily injury" in this statute mirrors the definition of the same in G.S. § 14-32.4. Clearly, the legislature has intended the definition of "serious physical injury" and "serious bodily injury" in this statute to possess distinctly different meanings.

At any rate, the evidence was sufficient to find defendant guilty of "serious physical injury" to Joshua as charged in 01 CRS 1061 and of "serious injury" to James Hendricks and Nannie Hendricks as charged in 01 CRS 1062 and 1064, respectively. Without detailing the injuries to each, the injuries suffered by all the victims clearly fall within the realm of injuries contemplated by the applicable statutes.

Accordingly, we find no error in the trial court's holdings.

N.C. FARM BUREAU MUT. INS. CO. v. EDWARDS

[154 N.C. App. 616 (2002)]

No error.

Judges WALKER and McCULLOUGH concur.