STATE OF NORTH CAROLINA v. ROBERT LEWIS WINGARD

No. 306A85

(Filed 12 August 1986)

**1. Indictment and Warrant § 8.4— murder—election between theories—not required**

The trial court did not err in a first degree murder prosecution by denying defendant's motion to compel the State to disclose prior to trial the theory on which it sought to convict him where the indictment set out sufficient factual information to enable defendant to understand the basis of the State's case against him and defendant did not show how an election between legal theories would have aided his trial preparation or show any other prejudice.

**2. Constitutional Law § 30— State not required to disclose criminal records of witnesses—no prejudice**

The trial court in a first degree murder prosecution did not err by denying defendant's motion to compel the State to disclose the criminal records of its witnesses because N.C.G.S. § 15A-903 does not give the defendant the right to the names of the State's witnesses, let alone their criminal records, and because defendant was given considerable information about the State's witnesses and the evidence against him.

**3. Constitutional Law § 63— death qualified jury constitutional**

The trial court did not err in a first degree murder prosecution by denying defendant's motion to prohibit death qualification of the jury.

**4. Jury § 6— first degree murder—individual voir dire and sequestration denied —no error**

The trial court did not err in a first degree murder prosecution by overruling defendant's motion for individual voir dire and sequestration of prospective jurors where defendant neither alleged nor showed any abuse of discretion by the trial judge and did not advance any argument showing how the denial of the motion prejudiced him. N.C.G.S. § 15A-1214(j).

**5. Criminal Law § 81— best evidence rule—order in which document read and introduced**

The trial court did not err in a first degree murder prosecution by allowing two threatening notes to the victim to be read into evidence where the State later produced the original notes in proving the contents of those notes. The order in which the notes were read and introduced as exhibits has no bearing on whether the notes violated the best evidence rule. N.C.G.S. § 8C-1, Rule 1002.

**6. Homicide § 15— threatening notes—definition of word—relevant**

The trial court did not err in a prosecution for first degree murder by allowing a witness to define "rollers" as used in a threatening note from defendant to his victim where the witness had heard defendant use "rollers" when referring to the police; the note was unquestionably relevant since it showed defendant's unrelenting desire and intent to locate the victim and do her physical harm; defining terms in the note unlikely to be familiar to jurors would appear to be relevant; and defendant did not demonstrate how it was prejudicial to his interests. N.C.G.S. § 8C-1, Rule 401 (Cum. Supp. 1985); N.C.G.S. § 15A-1443(a) (1983).

**7. Criminal Law §§ 73.4, 162— murder—statement of bystander—excited utterance**

The trial court did not err in a first degree murder prosecution by admitting testimony that a bystander told defendant not to shoot his victim any more because he had already killed her where the statement was an excited utterance within the meaning of N.C.G.S. § 8C-1, Rule 803(2); moreover, defendant waived his objection by eliciting the same testimony on cross-examination.

**8. Homicide § 15— first degree murder—testimony that victim pregnant—no prejudice**

Defendant failed to show in a first degree murder prosecution that he was prejudiced by the admission of irrelevant testimony that the victim was pregnant. N.C.G.S. § 15A-1443(a) (1983).

**9. Homicide § 30.3— first degree murder—failure to instruct on involuntary manslaughter—no error**

The trial judge did not err in a first degree murder prosecution by failing to instruct the jury on involuntary manslaughter where there was no evidence from which the jury might infer that there was an unintentional discharge of the weapon.

**10. Criminal Law § 102.6— first degree murder—argument of prosecutor—no error**

The trial court did not err in a first degree murder prosecution by overruling defendant's objections to statements in the prosecutor's closing argument that defendant was hunting the victim, that the State of North Carolina deserved a guilty verdict, and that as spokesman for the State, he demanded such a verdict.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment entered by *Ferrell, J.,* at the 21 January 1985 Criminal Session of Superior Court, BUNCOMBE County, imposing life imprisonment upon a jury verdict of guilty of murder in the first degree. Heard in the Supreme Court 15 April 1986.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*J. Robert Hufstader, Public Defender, and John Byrd, Assistant Public Defender, for the Twenty-Eighth Judicial District, for defendant-appellant.*

FRYE, Justice.

Defendant argues eleven assignments of error on this appeal. He contends that the trial court erred in denying his motions to compel disclosure of the theory upon which the State sought to convict him, to disclose criminal records of the State's witnesses, to prohibit death qualification of the jury, and to allow individual *voir dire* and sequestration of prospective jurors. Defendant further alleges that the trial court erred in allowing notes to be read into evidence; testimony as to the meaning of "rollers"; testimony concerning a statement made by an eyewitness to the shooting; and evidence that the victim was pregnant at the time of the

shooting. Lastly, defendant contends that the trial court erred in failing to give a jury instruction on involuntary manslaughter, and in overruling objections to portions of the prosecutor's closing arguments. We find no reversible error.

Defendant was charged with murder in the first degree. The State's evidence tended to show that on the evening of 31 December 1983, defendant went to Beverly Roselle Howell's apartment and loaded several guns. He placed a threatening note on the kitchen table and told Ms. Howell's twelve-year-old son to give the note to his mother when she came home. Several days earlier defendant had left another threatening note for Ms. Howell.

Sometime between the hours of 2:00 and 3:00 a.m., 1 January 1984, defendant went to an apartment in Deaverview Apartments where Ms. Howell was attending a New Year's party. With a pistol in his right hand, defendant approached Ms. Howell, grabbed her hair with his left hand, and began hitting her with his right hand. Mr. Ray, a guest at the party, attempted to break up the fight. After the parties struggled for a brief period, defendant pushed Ms. Howell to the floor, and tried to kick her in the face. She raised her hands to block the kick and defendant shot her in the head. Defendant then bent over Ms. Howell with the gun still in his hand. At this point, Mr. Ray said "not to shoot her no more because he had already killed her." Defendant yelled, "Hell, yes, the bitch is dead," and turned to Juanita Taylor, the deceased's friend, and said, "You too, Puddin'. You're next." Defendant went outside the apartment and fired the gun several times into the air.

Ms. Howell died on 10 March 1984 of bronchopneumonia. Dr. George Lacy, the pathologist who performed the autopsy, testified that the initiating cause of Ms. Howell's death was a gunshot wound to the head. Defendant offered no evidence.

The jury returned a verdict of guilty of murder in the first degree. At the sentencing hearing the jury found one aggravating circumstance and five mitigating circumstances and also found that the mitigating circumstances were insufficient to outweigh the aggravating circumstance found by the jury. Nevertheless the jury failed to find beyond a reasonable doubt that the aggravating circumstance found by the jury was sufficiently substantial to call for the imposition of the death penalty when considered with

the mitigating circumstances found by it. Following the unanimous recommendation of the jury, defendant was sentenced to life imprisonment.

## I.

[1] Defendant contends that the trial court erred in denying his motion to compel the State to disclose prior to trial the theory on which it sought to convict him of murder in the first degree.

It is well established that "the State is not generally required to elect between legal theories in a murder prosecution prior to trial." *State v. Silhan,* 302 N.C. 223, 235, 275 S.E. 2d 450, 462 (1981). "Where the factual basis for the prosecution is sufficiently pleaded, defendant must be prepared to defend against any and all theories which these facts support." *Id.* Defendant did not file a motion for a bill of particulars nor does he now challenge the sufficiency of the indictment. After examining the record, we conclude that the murder indictment set out sufficient factual information to enable defendant to understand the basis of the State's case against him. Defendant has not shown how an election between legal theories would have aided his trial preparation, nor has he shown any other prejudice. The trial judge did not err in denying defendant's motion.

## II.

[2] Defendant contends that the trial court erred in denying his motion to compel the State to disclose the criminal records of its witnesses in the case against him on the grounds that such information would have aided him in his defense.

The pertinent statute, N.C.G.S. § 15A-903, "does not grant the defendant the right to discover the names and addresses, let alone the criminal records, of the State's witness." *State v. Robinson,* 310 N.C. 530, 536, 313 S.E. 2d 571, 575 (1984). Therefore, defendant's motion was properly denied.

We note that the record shows that defendant was given considerable information about the State's witnesses and the evidence against him. Defendant in arguing his motion to compel discovery stated that the prosecutor had "opened his files" to him. The evidence discloses that the district attorney gave defendant copies of the contents of his file in this case. Defendant's assignment of error is without merit.

### III.

[3]  Defendant next contends that the trial court erred in denying his motion to prohibit "death qualification" of the jury prior to the guilt-innocence phase of the trial. Defendant asks this Court to reconsider its holding in *State v. Young*, 312 N.C. 669, 325 S.E. 2d 181 (1985), in light of "original" arguments presented in *Keeten v. Garrison*, 578 F. Supp. 1164 (W.D.N.C. 1984), *rev'd*, 742 F. 2d 129 (4th Cir. 1984).

In a recent United States Supreme Court decision, *Lockhart v. McCree*, 476 U.S. 162, 90 L.Ed. 2d 137 (1986), the Court held that "death qualification" of the jury in capital cases does not violate the federal constitution. The trial judge properly denied defendant's motion.

### IV.

[4]  Defendant contends that the trial judge erred in overruling his motion for individual *voir dire* and sequestration of prospective jurors on the grounds that N.C.G.S. § 15A-1214(j) provides for such procedure and the denial of the motion denied him a fair trial. By this assignment, defendant asks this Court to reconsider our decisions holding that it is within the trial judge's discretion to allow a motion for individual *voir dire* and sequestration of prospective jurors, and his rulings thereon will not be reversed absent a showing of abuse of that discretion. *See State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569 (1982); *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981); *State v. Barfield*, 289 N.C. 306, 259 S.E. 2d 510 (1979). Defendant has neither alleged nor shown any abuse of discretion by the trial judge in the instant case. Nor does defendant advance any argument showing how the denial of the motion prejudiced him. We decline to reconsider our previous holdings on this issue.

### V.

[5]  Defendant next contends that the trial judge erred in allowing two "notes" written by him to the victim to be read into evidence over his objections.

Several days prior to the shooting, defendant left the following note for the victim:

I've just heard you were up town running your *lip*. And other things. Your *ass* is mine. Lewis

On the night of the shooting defendant left another note for the victim at her apartment as follows:

*Now lady* I knew this was coming down — that's why I said go by *yourself.* You are *dumb. Yeah.* Girl you have just put you and your *partner* in the *hospital.* Pray that I can't find you. Lewis. Your Executioner. P.S. Ain't no way you can get out of this. If you call the *rollers* I will get *out.* So you are in *Big Trouble.* You better *Hide.* Their [sic] is no way you can hide.

The victim's son gave the notes to the police when they came to his mother's apartment investigating the shooting. At the trial, the boy identified State's exhibits #1 and #2 as the notes written by defendant. Lieutenant Foster, Asheville Police Department, testified that exhibits #1 and #2 were the notes given to him by the boy on the night of the shooting. Shortly after receiving the notes, Foster went to police headquarters and gave the notes to Detective Lambert. Detective Lambert, Asheville Police Department, testified that State's exhibits #1 and #2 were the notes given to him by Lieutenant Foster on the night of the shooting and that the notes had been in his custody and control since that time. Over defendant's objection Detective Lambert was allowed to read the notes. The State's request to have the notes introduced into evidence was granted and the notes were examined by the jurors. Defendant's argument is that the trial judge circumvented the Best Evidence Rule by allowing the notes to be read to the jury prior to being introduced into evidence.

N.C.G.S. § 8C-1, Rule 1002, the Best Evidence Rule, provides that "to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." During the witnesses' testimony concerning the contents of the notes, the original notes were in the courtroom and in the hands of the persons testifying about them. Thereafter, the notes were introduced into evidence and examined by the jurors.[1] In view of the fact that the State produced the original notes in proving the contents

---

1. Defendant has expressly abandoned his objection to the introduction of the notes.

of the notes, there was no violation of the Best Evidence Rule. The order in which the notes were read and introduced as exhibits has no bearing on whether the writing itself violates the Best Evidence Rule. Defendant's assignment of error is without merit.

## VI.

[6] Defendant contends that the trial court erred in allowing witness Taylor to testify as to the meaning of the term "rollers" used in one of the notes written by defendant on the grounds that such evidence was irrelevant in the case against him.

In the note left by defendant on the night of the shooting, defendant wrote: "If you call the *rollers* I will get out." On direct examination, the prosecutor asked witness Taylor if she knew what the term "rollers" meant. Over defendant's objection, she was allowed to testify that she had heard defendant use "rollers" when referring to the police. Defendant contends that such testimony was irrelevant to the issues in this case, and therefore was inadmissible evidence.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (Cum. Supp. 1985). Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case. *State v. Hannah*, 312 N.C. 286, 322 S.E. 2d 148 (1984); *State v. Bates*, 309 N.C. 528, 308 S.E. 2d 258 (1980). The note left at the victim's apartment on the night of the shooting was unquestionably relevant in this case since it showed defendant's unrelenting desire and intent to locate the victim and to do her physical harm. The definition of terms used in the note unlikely to be familiar to the jurors would also appear to be relevant. Assuming, *arguendo*, that the relevance of this evidence is too attenuated for it to have been properly admitted, defendant has not demonstrated how it was prejudicial to his interests. *See* N.C.G.S. § 15A-1443(a) (1983).

## VII.

[7] Defendant contends that the trial court erred in allowing witness Bryant to testify that after defendant shot Ms. Howell, Mr. Ray, a bystander, told defendant "not to shoot her no more

because he had already killed her." Defendant argues that the statement was hearsay which does not fall within any recognized exception to the hearsay rule.

Evidence is hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness who is testifying at the hearing or trial and is offered in evidence to prove the matter asserted therein. N.C.G.S. § 8C-1, Rule 801(c) (Cum. Supp. 1985); 1 Brandis on North Carolina Evidence § 138 (Supp. 1983). Hearsay evidence is inadmissible unless an exception is applicable. Commentary, N.C.G.S. § 8C-1, Rule 802 (Cum. Supp. 1985).

The evidence to which defendant objects is clearly hearsay. Its probative value depended on the competency and credibility of a person other than the witness testifying. In fact, Mr. Ray, the person to whom the statement was attributed, was not called by either party to testify at trial. Therefore, if we assume that the evidence was offered to prove the matter asserted therein, the propriety of the trial court's ruling depends on whether the evidence falls within an exception to the hearsay rule.

N.C.G.S. § 8C-1, Rule 803, lists twenty-four exceptions to the hearsay rule where the availability of the declarant at trial is immaterial. The "excited utterance" exception, Rule 803(2), is applicable in the case at hand. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C.G.S. § 8C-1, Rule 803(2) (Cum. Supp. 1985). This statutory exception is the codification of the common-law exception, spontaneous utterance. *See State v. Murvin*, 304 N.C. 523, 284 S.E. 2d 289 (1981). The rationale for the admissibility of an excited utterance is its trustworthiness. "Circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Commentary, N.C.G.S. § 8C-1, Rule 803 (Cum. Supp. 1985).

In the instant case, the statement to which defendant objects was made by a person standing near the spot where the victim was shot. The statement was made immediately after defendant shot the victim and bent over her with the gun still in his hand. It was clearly a statement relating to the startling attack and

shooting while the declarant was under the stress of excitement caused by the event. As such, it is an excited utterance within the meaning of Rule 803(2) and admissible into evidence notwithstanding its hearsay character.

We also note that defendant waived his objection to the testimony concerning the statement made by Mr. Ray after the shooting. After witness Bryant testified on direct examination as to Mr. Ray's statement, defense counsel, on cross-examination, elicited the same testimony to which no objection was made. It is a well-settled rule that "if a party objects to the admission of certain evidence and the same or like evidence is later admitted without objection, the party has waived the objection to the earlier evidence." 1 Brandis on North Carolina Evidence § 30 (1982); *State v. Tysor*, 307 N.C. 679, 300 S.E. 2d 366 (1983). Therefore, witness Bryant's testimony on cross-examination as to what Mr. Ray said after the shooting operated as a waiver of defendant's objection to her testimony on direct examination.

## VIII.

[8]  Defendant argues that the trial court erred in denying his *motion in limine* and in allowing the pathologist's testimony that the victim was pregnant at the time of the shooting. Defendant contends that this evidence was irrelevant, and even if relevant, its prejudicial effect outweighed its probative value. According to the State, evidence of the pregnancy is a collateral issue but relevant since it relates to the ability of the victim to protect herself in the struggle with defendant.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (Cum. Supp. 1985). In light of the fact that defendant did not assert self-defense as a defense to the crime, we agree with defendant's contention that evidence that the victim was pregnant at the time of the shooting was irrelevant, at least during the guilt-innocence phase of the trial. Nevertheless, the admission of irrelevant evidence is generally considered harmless error and not reversible error unless it is of such a nature as to mislead the jury. *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983). Defendant has the burden of showing that he was prejudiced by the admission of the

evidence. *Id.* Defendant has clearly failed to show that he was prejudiced by the admission of the irrelevant evidence. N.C.G.S. § 15A-1443(a) (1983).

## IX.

[9] Defendant argues that the trial court erred in failing to instruct the jury on the lesser included offense of involuntary manslaughter. It is defendant's contention that since there was evidence of a "struggle" or "scuffle" between him and the victim, an inference can be drawn that he unintentionally killed the victim by means of a culpably negligent act.

The trial court is not required to charge the jury on the question of defendant's guilt of lesser degrees of the crime charged in the indictment where there is no evidence to sustain a verdict of such lesser degrees. *State v. Strickland,* 307 N.C. 274, 298 S.E. 2d 645 (1983). We must, therefore, determine whether there was evidence at trial to support a verdict of involuntary manslaughter.

Involuntary manslaughter is "the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Hill,* 311 N.C. 465, 471, 319 S.E. 2d 163, 167 (1984).

In the instant case, defendant did not testify or put on any evidence. The State's evidence tended to show that on the night of the shooting defendant went to the victim's apartment, loaded several guns, left a threatening note for the victim, and left, taking the guns with him. Later that night, defendant went to an apartment where the victim was attending a party, grabbed her by her hair, and began hitting her. He threw her to the floor, tried to kick her in the face, and then shot her in the head. Defendant yelled, "Hell, yes, the bitch is dead," and then said to Juanita Taylor, a friend of the deceased, "You, too, Puddin'. You're next." The State's evidence, if believed, tends to show an intentional killing. There was no evidence presented from which the jury might infer that there was an unintentional discharge of the weapon. *See State v. Robbins,* 309 N.C. 771, 309 S.E. 2d 188 (1983). Therefore, the trial judge did not err in failing to instruct on involuntary manslaughter.

## X.

**[10]** We now consider defendant's assignments of error X and XI, both dealing with statements made by the prosecutor in his closing argument to the jury. Defendant contends that the trial court erred in overruling his objections to the prosecutor's argument that defendant was "hunting" the victim, and the argument that "Ladies and gentlemen, the State of North Carolina deserves a verdict of guilty to first degree murder, and as spokesman for the State I demand that verdict and . . . ."

This Court has consistently stated that "argument of counsel must be left largely to the control and discretion of the presiding judge and that counsel must be allowed wide latitude in the argument of hotly contested cases." *State v. Monk*, 286 N.C. 509, 515, 212 S.E. 2d 125, 131 (1975). Counsel for both sides are entitled to argue before the jury law and facts in evidence and all reasonable inferences to be drawn therefrom. *Id.* However, "counsel may not place before the jury incompetent and prejudicial matters, and may not 'travel outside the record' by injecting into his argument facts of his own knowledge or other facts not included in the evidence. Nor may counsel argue principles of law not relevant to the case." *Id.* It is the duty of the trial court, upon objection, to censor remarks not warranted by either the evidence or the law or remarks calculated to mislead or prejudice the jury. *Id.* "If the impropriety is gross it is proper for the court even in the absence of objection to correct the abuse *ex mero motu.*" *Id.*

Defendant contends that in arguing that he was "hunting" the victim, the prosecutor traveled outside the record and injected facts not in evidence. It is clear in this case that the prosecutor's argument was a reasonable inference to be drawn from the evidence. On the night of the shooting, defendant left the victim a note stating, "Pray that I can't find you." Defendant left Ms. Howell's apartment, carrying a loaded weapon, and later arrived at an apartment where she was attending a party. Defendant immediately attacked and shot her. A reasonable inference from this evidence is that defendant was vigorously searching for Ms. Howell. Therefore, the prosecutor's use of the term "hunting" when describing defendant's actions was compatible with the evidence in the case. The trial judge acted properly in overruling defendant's objection.

Defendant next contends that the trial judge erred in over-ruling his objection to the prosecutor's statement that the State of North Carolina deserved a verdict of guilty of first degree murder, and as spokesman for the State he demanded such a verdict. Defendant argues that in making this argument, the prosecutor placed before the jury incompetent and prejudicial matters. We disagree with defendant's contention. When the prosecutor's jury argument is considered as a whole, as it must be, we find that the statement to which defendant objects was nothing more than an assertion that the evidence at trial warranted a conviction for the charged crime. *See State v. Payne*, 312 N.C. 647, 325 S.E. 2d 205 (1985). This is a permissible argument. The trial judge properly overruled defendant's objection.

Defendant's trial was free from prejudicial error.

No error.