STATE OF NORTH CAROLINA v. DANIEL DAVID WEST, Defendant

No. COA09-851

(Filed 16 February 2010)

**1. Appeal and Error— preservation of issues—failure to object—failure to argue**

Although defendant contends the trial court erred by admitting a witness's statement, this assignment of error was dismissed because defendant failed to object at trial and failed to argue plain error.

**2. Evidence— testimony—subject of ongoing FBI investigation—waiver of objection**

Although defendant contends the trial court erred by admitting a witness's statement that defendant was the subject of an on going FBI investigation, defendant elicited this same testimony on cross-examination and thus waived objection to the admission of the challenged testimony.

**3. Appeal and Error— preservation of issues—failure to argue**

Although defendant contends the trial court erred in a prosecution for performing a notarial act without a commission by admitting a witness's statement about a cease and desist lawsuit, this assignment of error was deemed abandoned under N.C. R. App. P. 28(b)(6) based on defendant's failure to argue it in his brief.

**4. Evidence— cross-examination—waiver of objection**

The trial court did not commit plain error in a prosecution for performing a notarial act without a commission by admitting testimony from three witnesses that defendant's actions were not legal and that certain legal standards had not been met. Defense counsel elicited the same testimony on cross-examination, thus constituting waiver of defendant's challenge to its admission on direct examination.

**5. Evidence— testimony—invalid notary seal—similar testimony already allowed**

The trial court did not err or commit plain error in a prosecution for performing a notarial act without a commission by admitting a witness's testimony that he noticed the "county

STATE v. WEST

[202 N.C. App. 479 (2010)]

notary" seal was not a valid seal. Another witness provided similar testimony.

**6. Evidence— testimony—cease and desist lawsuit—no legal conclusions offered**

The trial court did not commit plain error in a prosecution for performing a notarial act without a commission by admitting a witness's testimony that the cease and desist lawsuit was fraudulent and meant to impede or stop an investigation. Nowhere in the testimony does the witness offer any legal conclusion regarding the legal sufficiency of the pertinent acknowledgment.

**7. Acknowledgments— performing notarial act without commission—motion to dismiss—sufficiency of evidence— single act**

The trial court did not err by failing to dismiss the charge of performing a notarial act without a commission even though defendant contends a violation under N.C.G.S. § 10B-60(e) requires multiple unauthorized notarial acts. A violation of the statute requires only a single unauthorized notarial act.

**8. Acknowledgments— performing notarial act without commission—instruction—single act**

The trial court did not err in a prosecution for performing a notarial act without a commission by instructing the jury "in the singular" even though defendant contends a violation of N.C.G.S. § 10B-60(e) requires that a person commit at least two unauthorized notarial acts. The trial court's instruction correctly defined the law arising on the evidence.

Appeal by defendant from judgment entered 17 December 2008 by Judge Dennis J. Winner in Buncombe County Superior Court. Heard in the Court of Appeals 11 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Richard H. Bradford, for the State.*

*David G. Belser for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Daniel David West appeals his conviction for performing a notarial act without a commission. Defendant primarily contends that a violation of the pertinent statute requires multiple unau-

thorized "notarial acts." Because the State's evidence tends to show only a single unauthorized notarial act, defendant claims that the trial court erred in failing to dismiss the charge. Guided by our rules of statutory interpretation, we conclude that a violation of the statute requires only a single unauthorized notarial act, and, therefore, the trial court properly submitted the charge to the jury. Accordingly, we find no error.

## Facts

The State's evidence at trial tended to establish the following facts: On 4 April 2008, Andrew F. Romagnuolo, a special agent with the FBI, was at home with his family when his doorbell rang. Romagnuolo went to the door and saw John Leroy McKinley, an individual who was under investigation by Romagnuolo. Romagnuolo asked McKinley what he was doing at his home, and when McKinley did not respond, Romagnuolo asked McKinley to leave his property. Concerned by McKinley's presence at his home, he grabbed McKinley's arm and began to force him off the front porch of the house. At this point, McKinley dropped a package, which contained a lawsuit against Romagnuolo, said " '[y]ou are served,' " and began walking away. As McKinley was walking away, Romagnuolo picked up the package and threw it at him, hitting him in the back of the head.

McKinley went to the Buncombe County Sheriff's Department on 7 April 2008 and complained that he had been assaulted by Romagnuolo on 4 April 2008. McKinley provided the deputies with an affidavit that had been acknowledged by defendant ("McKinley affidavit"). The affidavit contained defendant's name, signature, and a seal indicating that defendant was a "county notary." McKinley was interviewed about his complaint and an incident report was prepared, but no charges were filed against Romagnuolo.

Cody Muse, a detective with the sheriff's department and Romagnuolo's partner on the North Carolina Joint Terrorism Task Force, investigated the incident involving Romagnuolo and McKinley. While reviewing the documentation relating to the incident, Muse became concerned that the McKinley affidavit was not notarized in accordance with North Carolina law. A search warrant for defendant's house was obtained and executed, during which Muse found a mechanical embossing seal matching the seal on the McKinley affidavit. Defendant was subsequently charged with performing notarial acts without being a commissioned notary.

In addition to other witnesses who testified at trial, Gayle Holder, the Director of the Certification and Filing Division of the Secretary of State's Office, testified that North Carolina law does not recognize the office of "county notary"—only the office of "notary public." She further stated that defendant had never been commissioned as a notary public in North Carolina and that the seal and language used in the acknowledgment of the McKinley affidavit did not comply with North Carolina law. The State also produced DMV records showing defendant's photograph and his signature, which matched the signature on the McKinley affidavit.

At the close of the State's evidence and after electing not to present any evidence in his defense, defendant moved to dismiss the charge for insufficient evidence. The trial court denied the motions and submitted the charge to the jury. The jury convicted defendant and the court sentenced defendant to four to five months imprisonment but suspended the sentence and imposed 36 months of supervised probation. Defendant timely appealed to this Court.

I

Defendant first assigns error to the trial court's admission of statements by Romagnuolo that (1) he was a member of the North Carolina Joint Terrorism Task Force; (2) defendant was a subject of an on-going FBI investigation; and (3) lawsuits involving cease and desist injunctions against law enforcement investigations are, based on his experience, "fraudulent and meant to impede or harass to stop an investigation." Defendant maintains that Romagnuolo's statements were irrelevant and prejudicial.

[1] As for Romagnuolo's first statement, that he was a member of the North Carolina Joint Terrorism Task Force, defendant argues that it is "obviously irrelevant to the prosecution of the defendant for the offense of performing notarial acts without being commissioned as a notary." Defendant, however, did not object to Romagnuolo's statement at trial on any basis, much less relevancy. Defendant, therefore, failed to preserve this specific contention for appellate review. N.C. R. App. P. 10(b)(1); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008). Nor has defendant specifically argued that the trial court committed plain error. Accordingly, we decline to review defendant's argument. *See State v. Martin*, 191 N.C. App. 462, 471, 665 S.E.2d 471, 477 (2008) ("[D]efendant failed to object at trial and has not specifically argued that the trial court committed plain error. Under such circumstances,

this Court will not review whether the alleged error rises to the level of plain error."), *disc. review denied*, —— N.C. ——, 676 S.E.2d 49 (2009).

**[2]** Defendant did object at trial to Romagnuolo's statement during direct-examination that defendant was a subject of an on-going FBI investigation. On cross-examination, however, defense counsel elicited the same testimony from Romagnuolo:

> Q. And did you also say that Mr. West was the subject of an investigation that you are doing?

> A. That's correct.

"It is a well-settled rule that 'if a party objects to the admission of certain evidence and the same or like evidence is later admitted without objection, the party has waived the objection to the earlier evidence.' " *State v. Wingard*, 317 N.C. 590, 599, 346 S.E.2d 638, 644 (1986) (quoting 1 *Brandis on North Carolina Evidence* § 30 (1982)). Defendant, therefore, waived his objection to the admission of the challenged testimony. *See id.* (holding witness' testimony during cross-examination waived defendant's objection to same testimony on direct examination).

**[3]** As for defendant's assignment of error concerning Romagnuolo's statement about the cease-and-desist lawsuit, defendant makes absolutely no argument in his brief challenging the admissibility of this testimony. This assignment of error is thus deemed abandoned on appeal. N.C. R. App. P. 28(b)(6); *State v. Williams*, —— N.C. ——, ——, 686 S.E.2d 493, 509· (2009). We have nonetheless reviewed the record on appeal and conclude that defendant's assignment of error is without merit.

II

**[4]** Defendant next contends that the trial court erred in admitting testimony by Holder, Muse, and Romagnuolo that "defendant's actions were not legal" and that "certain legal standards had [not] been met." Because defendant failed to object to the pertinent testimony at trial, his argument is subject to plain error review. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

Under the Rules of Evidence, a witness, whether an expert or lay witness, "may not testify that a particular legal conclusion or standard has or has not been met, at least where the standard is a legal term of art which carries a specific legal meaning not readily apparent to the witness." *State v. Ledford*, 315 N.C. 599, 617, 340 S.E.2d 309, 321 (1986); *accord Norris v. Zambito*, 135 N.C. App. 288, 292, 520 S.E.2d 113, 116 (1999) ("Opinion testimony may be received regarding the underlying factual premise, which the fact finder must consider in determining the legal conclusion to be drawn therefrom, but may not be offered as to whether the legal conclusion *should* be drawn.").

Holder testified on direct-examination that the signature on the McKinley affidavit's acknowledgment, the language in the acknowledgment, and the "county notary" seal affixed to the affidavit did not "meet the North Carolina requirements to be a legal notarial act." Although defendant contends that "Ms. Holder should not have been allowed to give her own opinion that the defendant's conduct amounted to a notarial act," defendant ignores the fact that on cross-examination, defense counsel questioned Holder extensively regarding the same "requirements to a valid notary or a valid notarial act[.]" In fact, defense counsel elicited testimony from Holder that the "county notary" seal appearing on the McKinley affidavit did not meet the requirements for a proper notarial act and that "the signature and the seal has no legal effect[.]" Defense counsel further inquired: "Now these words acknowledgement [sic], oath and affirmation and proof, these are all magic words in the law; aren't they?" In response, Holder explained the meaning of these "legal terms."

Defense counsel elicited on cross-examination the same testimony from Holder regarding the legal requirements necessary to constitute a valid notarial act that defendant claims was impermissible on direct-examination. Eliciting this testimony on cross-examination constituted waiver of defendant's challenge to its admission on direct-examination. *See Wingard*, 317 N.C. at 599, 346 S.E.2d at 644 (holding defendant waived objection to challenged testimony on direct-examination when "defense counsel, on cross-examination, elicited the same testimony to which no objection was made").

[5] Defendant also assigns plain error to the admission of Muse's testimony that he noticed the "county notary" seal when he reviewed the McKinley affidavit and that, based on his "review of the state statutes," he "knew" it was not a "valid seal[]." In light of Holder's similar testimony, the trial court did not err, much less commit plain error, in admitting Muse's testimony. *See State v. Reid*, 335 N.C.

647, 663, 440 S.E.2d 776, 785 (1994) (finding no error in admitting hearsay testimony of one witness when subsequent witness provided similar testimony).

[6] Defendant also argues that Romagnuolo should not have been allowed to testify that, based on his experience, "these types of submissions"—referring to the cease and desist lawsuit—"are fraudulent and meant to impede or harass to stop an investigation." Review of the transcript reveals that defendant's argument is simply a reprise of his contention regarding the relevancy of Romagnuolo's testimony. Nowhere in his testimony does Romagnuolo offer any legal conclusion regarding the legal sufficiency of the McKinley acknowledgment.

III

[7] Defendant next argues that the trial court erred in failing to dismiss for insufficient evidence the charge of performing notarial acts without a commission. On appeal, the trial court's denial of a motion to dismiss for insufficient evidence is reviewed de novo. *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982). A defendant's motion to dismiss should be denied if there is substantial evidence: (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of the offense. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In ruling on a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). Contradictions and discrepancies do not warrant dismissal but are for the jury to resolve. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

N.C. Gen. Stat. § 10B-60(e) (2009) makes it unlawful "for any person to perform *notarial acts* in this State with the knowledge that the person is not commissioned under this Chapter." (Emphasis added.) N.C. Gen. Stat. § 10B-3(11) (2009) lists the "notarial acts" a notary public is "empowered to perform" under Chapter 10B of the General Statutes: (1) "taking an acknowledgment"; (2) "taking a verification or proof"; and (3) "administering an oath or affirmation[.]" *See also* N.C. Gen. Stat. § 10B-20(a) (2009) (providing that a notary may perform "[a]cknowledgments," "[o]aths and affirmations," and "[v]erifications or proofs"). Defendant argues that because § 10B-60(e) prohibits

"notarial acts" rather than a single notarial act, the State is required to "prove a defendant performed the functions of a notary on more than one occasion." Based on this reading of the statute, defendant maintains that, "taken in the light most favorable to the State, the evidence shows only a single notarial act, i.e., the acknowledgement [sic] by the defendant of a signature on the McKinley affidavit."

The State counters that defendant's "tortured" interpretation of § 10B-60(e) leads to the illogical conclusion that so long as a person commits only a *single* notarial act knowing that he or she is not a commissioned notary, that person has not violated § 10B-60(e). The State argues that the General Assembly could not have intended to allow "one 'free' offense" of § 10B-60(e).

Questions of statutory interpretation are questions of law, reviewed de novo on appeal. *Piedmont Triad Airport Auth. v. Urbine*, 354 N.C. 336, 338, 554 S.E.2d 331, 332 (2001), *cert. denied*, 535 U.S. 971, 152 L. Ed. 2d 381 (2002). The primary goal of statutory interpretation is to ascertain and effectuate the intent of the legislature. *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991). In determining legislative intent, "a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish." *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 895 (1998). Where "the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give [the statute] its plain and definite meaning." *Lemons v. Old Hickory Council*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988). Where, however, the statutory language is ambiguous, judicial construction is necessary to determine legislative intent. *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990).

The Legislature established rules for interpreting our statutes in N.C. Gen. Stat. § 12-3 (2009), which provides in pertinent part:

In the construction of all statutes the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the context of the same statute, that is to say:

(1) Singular and Plural Number, Masculine Gender, etc.— Every word importing the singular number only shall extend and be applied to several persons or things, as well as to one person or thing; and every word importing the plural number

only shall extend and be applied to one person or thing, as well as to several persons or things[.]

N.C. Gen. Stat. § 12-3(1). As mandated by § 12-3(1), we interpret § 10B-60(e) to mean that a person violates the statute if the person performs *one or more notarial acts* with the knowledge that he or she is not a commissioned notary. *See State v. Wilkerson*, 98 N.C. 696, 701, 3 S.E. 683, 686 (1887) (holding that statute referring to "person" included "persons").

Arguing that it would be "repugnant to the overall context of the statutory scheme regulating notaries public" to construe § 10B-60(e) as permitting only a single notarial act to constitute a violation, defendant points to N.C. Gen. Stat. § 10B-60(b), which provides in pertinent part:

[A] person who commits any of the following acts is guilty of a Class 1 misdemeanor:

. . . .

(2) Performing a notarial act if the person's commission has expired or been suspended or restricted.

(3) Performing a notarial act before the person had taken the oath of office.

N.C. Gen. Stat. § 10B-60(b)(2)-(3). Because § 10B-60(b)(2) and (3) refer to a "notarial *act*" rather than to "notarial *acts*," as used in § 10B-60(e), defendant asserts that the two terms cannot be read interchangeably.

Rather than supporting defendant's contention, § 10B-60(b)(2) and (3) undermine defendant's interpretation of § 10B-60(e). Both § 10B-60(b)(2) and (3) address situations where the person performing the notarial act has been or potentially will be commissioned as a notary public, but neither provides for the scenario where the person is not an appointee or has never been commissioned as a notary.[1] Thus, following defendant's argument to its logical conclusion, a person may perform a single notarial act without violating § 10B-60(b) or § 10B-60(e) so long as the person has never been a notary or an appointee. We do not believe that the General Assembly intended to create such a problematic gap in the statutory scheme governing notaries public.

---

1. An "appointee" is a person who has been granted a notary public commission by the Secretary of State's Office but who has not taken the oath of office. N.C. Gen. Stat. § 10B-10 (2009).

Review of other provisions in Chapter 10B further illustrate the flaw in defendant's reasoning. N.C. Gen. Stat. § 10B-3(4), for example, defines the term "[c]ommission" as the "[t]he empowerment to perform notarial acts and the written evidence of authority to perform those acts." If, as defendant urges, the reference to "notarial acts" in § 10B-3(4) denotes only multiple acts, then a person may perform a notarial act without a commission so long as the person only performs one act.

Moreover, adopting defendant's interpretation leads to untoward consequences undermining the stated purposes of Chapter 10B. N.C. Gen. Stat. § 10B-2 (2009) provides that, among other things, the purposes of Chapter 10B are "[t]o promote, serve, and protect the public interests"; "[t]o simplify, clarify, and modernize the law governing notaries"; and "[t]o prevent fraud and forgery." In light of these purposes, it is unreasonable to read § 10B-60(e) as permitting non-commissioned members of the public to perform a notarial act so long as they do it only once. We, therefore, conclude that a person may be convicted of violating § 10B-60(e) if that person commits one or more notarial acts with the knowledge that he or she is not a commissioned notary.

Defendant nonetheless argues that pursuant to the "rule of leniency," § 10B-60(e) must be construed liberally in his favor. Defendant is correct that criminal statutes are to be strictly construed against the State. *State v. Hearst*, 356 N.C. 132, 136, 567 S.E.2d 124, 128 (2002). The "rule of leniency," however, only requires the court to "strictly construe *ambiguous* criminal statutes." *State v. Abshire*, 363 N.C. 322, 332, 677 S.E.2d 444, 451 (2009) (emphasis added). Defendant points to no ambiguity in § 10B-60(e); in fact, defendant's argument hinges upon a strictly literal interpretation of § 10B-60(e). Interpreting § 10B-60(e)'s reference to "notarial acts" in conjunction with § 12-3(1)'s directive that plural words are to be understood as encompassing both the plural and singular meaning of the word indicates that § 10B-60(e) is not ambiguous. Moreover, even assuming that § 10B-60(e) is ambiguous,

> " '[t]he canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.' "

.

*State v. Raines,* 319 N.C. 258, 263, 354 S.E.2d 486, 490 (1987) (quoting *United States v. Brown,* 333 U.S. 18, 25-26, 92 L. Ed. 442, 448 (1948)) (first alteration added). Interpreting § 10B-60(e) to require multiple notarial acts in order to constitute a violation would require ignoring the General Assembly's mandate in § 12-3(1) regarding the interpretation of this State's statutes and would require "overrid[ing] common sense and [the] evident statutory purpose[s]" of protecting the public, simplifying the law, and preventing fraud.

As for the sufficiency of the evidence in this case, defendant admits in his appellate brief that the evidence showed "a single notarial act, i.e., the acknowldgement [sic] by the defendant of a signature on the McKinley affidavit." The State's evidence tended to show that defendant was in possession of a "county notary" seal, that the county notary seal in defendant's possession matched the seal affixed to the McKinley affidavit, that the signature purportedly acknowledging the affidavit matched defendant's signature in DMV records, and that defendant is not commissioned as a notary by the Secretary of State's Office. From this evidence, the jury could reasonably conclude that defendant performed a notarial act knowing that he was not a commissioned notary in violation of § 10B-60(e). The trial court, therefore, properly denied defendant's motion to dismiss.

IV

[8] Based on his argument that in order to violate § 10B-60(e), a person must commit at least two unauthorized notarial acts, defendant contends that the trial court erroneously instructed the jury "in the singular": "[I]f the State has satisfied you beyond a reasonable doubt that on or about the alleged date the defendant performed *an act of a notary public* when he knew he did not have a notary public certificate from the State, and in fact he had no such certificate, it would be your duty to find the defendant guilty of this charge." (Emphasis added.)

"A trial judge is required by N.C.G.S. § 15A-1231 and N.C.G.S. § 15A-1232 to instruct the jury on the law arising on the evidence." *State v. Bogle,* 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). When the trial court "undertakes to define the law," the court "must state it correctly." *State v. Earnhardt,* 307 N.C. 62, 70, 296 S.E.2d 649, 654 (1982). As we have already held that a single notarial act performed by a defendant with knowledge that he or she was not a commissioned notary is sufficient to constitute a violation of § 10B-60(e), the trial court's instructions correctly define the law arising on the evidence in this case. Finding no error, we uphold defendant's conviction.

No Error.

Chief Judge MARTIN and Judge ERVIN concur.