IN RE RELEASE OF THE SILK PLANT FOREST CITIZEN REVIEW COMMITTEE'S REPORT AND APPENDICES, Petitioner v. MICHAEL N. BARKER, RICHARD E. BEST, ROBERT G. COZART, JOHN GRISMER, BRYAN L. MACY, MICHAEL C. ROWE, MICHAEL L. SHARPE, MICHAEL POE, RANDY PATTERSON, RANDY N. WEAVIL, LONNIE M. MAINES, MARY McNAUGHT, et. al., Respondents

No. COA10-1516

(Filed 4 October 2011)

**Police Officers—examination of confidential personnel files by general public—no trial court authority**

The trial court did not have the authority under N.C.G.S. § 160A-168(c)(4) to grant the City's petition for disclosure of transcripts contained in respondent police officers' confidential personnel files.

Appeal by respondents from order entered 4 March 2010 by Judge Richard W. Stone in Forsyth County Superior Court. Heard in the Court of Appeals 17 August 2011.

*Alan A. Andrews for petitioner-appellee.*

*The McGuinness Law Firm, by J. Michael McGuinness, for respondents-appellants.*

HUNTER, Robert C., Judge.

Respondent police officers ("the officers" or "respondents") appeal from the trial court's 4 March 2010 order granting the City of Winston-Salem's ("the City") petition for disclosure of transcripts contained in respondents' personnel files.[1] Respondents argue on appeal that: (1) the trial court erred in granting the petition pursuant to N.C. Gen. Stat. § 160A-168(c)(4) (2009), and (2) disclosure of the transcripts would violate respondents' privacy and liberty interests guaranteed under the 9th and 14th Amendments of the United States Constitution and Article I, Sections 1, 19, 35, and 36 of the North Carolina Constitution. After careful review, we reverse the trial court's order.

Background

On 22 October 2007, the City of Winston-Salem City Council adopted a resolution establishing a citizen review committee called the Silk Plant Forest Review Committee ("the Committee"), the pur-

---

1. Only Michael N. Barker, Richard E. Best, Robert G. Cozart, John Grismer, Michael C. Rowe, Michael L. Sharpe, Michael Poe, and Randy Patterson are listed as respondents-appellants on the notice of appeal in this case.

pose of which was to "conduct a comprehensive fact finding review"of the Winston-Salem Police Department's investigation into the 1995 assault and robbery of Jill Marker.[2] This police investigation ultimately led to the indictment and conviction of Kalvin Michael Smith for the crimes of assault with a deadly weapon with intent to kill inflicting serious injury and armed robbery. According to the City's resolution, the police department's investigation into the attack on Ms. Marker "resulted in questions concerning whether police procedures were properly followed[.]" During the Committee's extensive inquiry into the 1995 police investigation, respondents, who are all current or former Winston-Salem police officers, were interviewed concerning their role in the investigation. The officers were notified in writing that the questioning by the Committee was a "part of an official investigation by the Winston-Salem Police Department" and that refusal to cooperate could result in "dismissal from the Police Department." These interviews were recorded and transcribed.

On 17 March 2009, the Committee, after concluding its inquiry, adopted a resolution which provided in part: "We are aware of no credible evidence that Kalvin Michael Smith was at the location of the Silk Plant Forest Store in Winston-Salem, North Carolina, on 9 December 1995, at or about the time that the crime for which he was charged was committed." The Committee further stated that it did not "have confidence in the investigation . . . or the result of the investigation" and that investigators "failed to follow procedures which, if followed, would have enhanced the reliability and completeness of the information that was provided to the prosecutors and ultimately the court."

On 16 October 2009, the City filed a petition with the Superior Court of Forsyth County requesting, *inter alia,* that the trial court grant "full disclosure" of the officers' transcribed interviews to the general public. The City provided the following rationale for its request:

> The Committee's materials are of great interest to the citizenry. There have been a number of requests both from citizens and the media for all the Committee's materials to be publicly released. The City Council has determined that a full release of the Committee's report, its appendices, and related materials is necessary and essential to maintaining public confidence in the administration of city services.

The City claimed that the transcripts of the officers' interviews were a part of the officers' personnel files, and, therefore, the City was

---

2. The resolution was amended on 3 March 2008.

required to obtain a court order pursuant to N.C. Gen. Stat. § 160A-168(c)(4) in order to lawfully release the transcripts to the general public.

The trial court deemed the action a special proceeding and conducted a hearing in regards to the petition on 15 January 2010. The trial court entered a written order on 4 March 2010 and found as fact that "despite any personnel privacy protections provided by N.C.G.S. 160A-168, it is necessary and essential to maintaining the public's confidence in the administration of City services, that these interview[] statements, in their entirety, be added to those Committee materials already publicly released." The trial court decreed: "The City is hereby authorized and permitted to make full public disclosure of interview statements, and any summaries or transcripts made therefrom, made by current and former members of the Winston-Salem Police Department . . . ." Respondents timely appealed to this Court. The trial court has stayed its order "until the completion of the appellate process."

## Discussion

First, we address respondents' claim that the trial court erred in granting the City's petition under the auspices of N.C. Gen. Stat. § 160A-168(c)(4).[3] N.C. Gen. Stat. § 160A-168 states in pertinent part:

(a) Notwithstanding the provisions of G.S. 132-6 or any other general law or local act concerning access to public records, personnel files of employees, former employees, or applicants for employment maintained by a city are subject to inspection and may be disclosed only as provided by this section. For purposes of this section, an employee's personnel file consists of any information in any form gathered by the city with respect to that employee and, by way of illustration but not limitation, relating to his application, selection or nonselection, performance, promotions, demotions, transfers, suspension and other disciplinary actions, evaluation forms, leave, salary, and termination of employment. As used in this section, "employee" includes former employees of the city.

. . . .

---

3. We note that respondents filed a motion to dismiss and a motion for directed verdict prior to the hearing in this matter. The trial court denied those motions in its order; however, the issue before us is whether the trial court erred in granting the City's petition, which was deemed a special proceeding, and not the propriety of the trial court's rulings on respondents' motions.

IN RE RELEASE OF SILK PLANT FOREST CITIZEN REVIEW

[216 N.C. App. 268 (2011)]

(c) All information contained in a city employee's personnel file, other than the information made public by subsection (b) of this section, is confidential and shall be open to inspection only in the following instances:

. . . .

(4) By order of a court of competent jurisdiction, any person may examine such portion of an employee's personnel file as may be ordered by the court.[4]

As a preliminary matter, the City argued before the trial court that the transcripts are, in fact, a part of the officers' personnel files. The City does not contend otherwise on appeal. Consequently, we will assume for purposes of this appeal that the transcripts at issue are a part of the officers' personnel files and are thus confidential and protected by N.C. Gen. Stat. § 160A-168(c).[5] The issue we must decide is whether the trial court had authority under N.C. Gen. Stat. § 160A-168(c)(4) to release the transcripts to the general public.

This Court has never directly addressed the scope of the trial court's authority to allow examination of confidential personnel files pursuant to N.C. Gen. Stat. § 160A-168(c)(4), and the statute itself is silent as to the extent of the trial court's authority. Consequently, the primary issue before us is whether the legislature intended to grant the trial court the authority to release portions of a city employee's confidential personnel file to the general public pursuant to N.C. Gen. Stat. § 160A-168(c)(4).[6] We hold that the trial court was not granted such authority under the statute.

"Questions of statutory interpretation are questions of law, reviewed de novo on appeal." *State v. West*, ___ N.C. App. ___, ___, 689 S.E.2d 216, 221 (2010).

The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute. The legislative purpose of a statute is first ascertained by examining the statute's plain language. Where the language of a statute is clear and unam-

---

4. The statute was amended by 2010 N.C. Sess. Law ch. 169, § 18(f) (effective Oct. 1, 2010). This amendment does not apply to the present action.

5. It is undisputed that the deposition transcripts are not a matter of public record pursuant to N.C. Gen. Stat. § 160A-168(b).

6. By disclosing the materials to the general public, the trial court would, in effect, provide the materials to the media, which has expressed an interest in all of the information and documents procured by the Committee.

biguous, there is no room for judicial construction[,] and the courts must give [the statute] its plain and definite meaning, *and are without power to interpolate, or superimpose, provisions and limitations not contained therein.*

*Liberty Mut. Ins. Co. v. Pennington,* 356 N.C. 571, 574-75, 573 S.E.2d 118, 121 (2002) (emphasis added) (internal citations and quotation marks omitted). "If the Legislature has used language of clear import, the court should not indulge in speculation or conjecture for its meaning. . . . Courts are not permitted to assume that the lawmaker has used words ignorantly or without meaning[.]" *Nance v. R.R.,* 149 N.C. 366, 371, 63 S.E. 116, 118 (1908). "Nothing else appearing, the legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning." *Wood v. Stevens & Co.,* 297 N.C. 636, 643, 256 S.E.2d 692, 697 (1979).

The plain language of N.C. Gen. Stat. § 160A-168(c)(4) allows, by order of the trial court, "examination" by "any person" the relevant "portion" of a city employee's personnel file. The natural meaning of these terms indicate a clear intent to maintain the privacy of a city employee's personnel file except under limited circumstances where examination of only the relevant portion of the file is allowed. The key term in this subsection is "any person." The legislature did not use the term "general public" or even the word "people." We must presume that the legislature chose "any person" as a limiting mechanism. While we do not read the term "any person" so narrowly as to mean only one individual, we do not read it so broadly as to mean the general public. Certainly, there are circumstances when justice requires that an individual, or perhaps a group of individuals sharing a common goal, be permitted to examine a relevant portion of a city employee's personnel file, but a wholesale publication of even a portion of the file would be contrary to the legislative intent behind N.C. Gen. Stat. § 160A-168(c)(4). Had the legislature intended to grant the trial court the authority to release these protected records to the general public, it would have done so in specific terms, or at least in terms that would render such an interpretation logical. Rather, the legislature chose to grant the trial court *limited authority* to allow "any person" to "examine" a relevant "portion" of the file.

Furthermore, when subsection (c) is read *in pari materia* with the remainder of the statute, the intent to keep these personnel files confidential is clear. In contrast to subsection (c), subsection (b) specifically states what information is deemed public, such as the employee's name, age, salary, and the office to which the employee is

assigned. N.C. Gen. Stat. § 160A-168(b). Thus, there is a clear delineation between what is public and what is confidential. What is confidential is, necessarily, not public information under this statute. Moreover, according to the statute, public records can not only be examined, they can by copied, and, consequently, disseminated to the general public. *Id.* That portion of a City employee personnel file that is not deemed public can only be "examine[d]" when so ordered by the trial court. N.C. Gen. Stat. § 160A-168(c)(4). The use of the word "examine," as opposed to "copy" or another word pertaining to mass publication, indicates the legislature's intent to limit the exposure of these personnel files. In fact, N.C. Gen. Stat. § 160A-168(e) makes it a criminal offense for a "public official or employee . . . [to] permit[] any person to have access to information contained in a personnel file[,]" with the exception of what is made public by subsection (b).[7]

As stated *supra*, this Court has never directly addressed the scope of the trial court's authority under N.C. Gen. Stat. § 160A-168(c)(4); however, *In re Brooks*, 143 N.C. App. 601, 606, 548 S.E.2d 748, 752 (2001), is instructive regarding the legislative intent behind the statute. In *Brooks*, the District Attorney of Orange County sought a court order requiring the disclosure of several police officers' personnel files to special agents of the State Bureau of Investigation for examination. *Id.* at 602-03, 548 S.E.2d at 750. The trial court granted the petition and the officers appealed. *Id.* This Court held that, "[t]he plain language of section 160A-168(c)(4) indicates that the Superior Court . . . being a court of competent jurisdiction, [i]s indeed authorized to allow inspection of the [police] officers' personnel files." *Id.* at 606, 548 S.E.2d at 752. Lacking guidance from the statute on the scope of the trial court's authority, this Court went on to set forth general parameters for the trial court's determination regarding examination of an employee's confidential personnel records:

> The Superior Court should make an independent determination that the interests of justice require disclosure of the confidential employment information. It is further within the Superior Court's inherent power and discretion to implement other procedures *as may be required to effectuate the legislature's intent that the information remain somewhat confidential.* The court could, for example, limit that dissemination and use of disclosed materials

7. We note that N.C. Gen. Stat. § 160A-168(c)(7) pertains to release of information regarding "disciplinary action"; however, this information may only be released if the procedures outlined in that subsection are followed. It does not appear from the record that any disciplinary action was taken against respondents.

to certain individuals, order an *in camera* inspection, or redact certain information.

*Id.* at 611, 548 S.E.2d at 755 (emphasis added). The *Brooks* Court recognized the legislative intent behind N.C. Gen. Stat. § 160A-168—to keep a city employee's personnel file confidential except under limited circumstances. *Brooks* does not address whether the trial court is permitted to make confidential personnel records available to the general public; however, the Court acknowledged that even when justice requires disclosure of this information, the disclosure should be narrowly tailored in order to adhere to the legislative intent.[8] *Id.*

Based on the foregoing, we hold that "a court of competent jurisdiction" does not have the authority under N.C. Gen. Stat. § 160A-168 (c)(4) to order the release of any portion of a city employee's confidential personnel file to the general public. Consequently, the trial court erred in granting the City's petition in this case. We must, therefore, reverse the trial court's order. We need not address respondents' remaining arguments, including their claim that the trial court's order violated their constitutional rights. *State v. Dubose*, ___ N.C. App. ___, ___, 702 S.E.2d 330, 335 (2010) ("[I]t is well-established that an appellate court will not decide a constitutional question when the disposition of the case may be resolved on other grounds.").

Reversed.

Judges STROUD and HUNTER, Robert N., Jr. concur.

---

8. The City argues that this Court reviews the trial court's determination under N.C. Gen. Stat. § 160A-168(c)(4) for abuse of discretion. Due to our determination that the trial court has no authority to release these protected files to the general public we need not address this matter; however, we note *Brooks* indicates that, in instances where the trial court has authority to allow examination of these records, the trial court has been given "inherent power and discretion" to tailor the method of disclosure. *Brooks*, 143 N.C. App. at 611, 548 S.E.2d at 755. It follows that the trial court's determination would be reviewed for an abuse of that discretion.