## STATE v. WILLIE O. BANKS
### AND
## STATE v. TOMMIE PAULING.

(Filed 11 October, 1967.)

**1. Indictment and Warrants § 17;   Robbery § 4—**

Where the indictment for robbery alleges the use of a "pistol," and the proof is that the robbery was committed with a "gun", there is no fatal variance, the word "gun" being a generic term for a variety of firearms and embracing within its meaning, in everyday speech the term "pistol".

**2. Robbery § 5;   Criminal Law § 111—**

The failure of the court, in instructing the jury upon the lesser offenses of robbery, to repeat an instruction previously given relating to the defense of alibi, is not error, since the jury could reasonably conclude that if defendant should be acquitted of armed robbery on the ground that he was not present at the time of the offense, he should likewise be acquitted of common law robbery.

APPEAL by defendants from *Martin, S.J.*, at the 3 April 1967 Regular Criminal Session of MECKLENBURG.

By separate indictments, each proper in form, the defendants were charged with the robbery of Roy Benjamin Cook "with the use and threatened use of firearms * * * to wit: a pistol." Without objection, the cases were consolidated for trial. The jury found each defendant "guilty as charged," and each was sentenced to confinement in the State Prison for a term of 12 years.

The alleged victim of the robbery, Roy Benjamin Cook, testified: He is a taxi driver. At approximately 10:30 p.m. on 24 January 1967, the two defendants approached his taxicab and asked him to carry them to a specified address. En route he had several opportunities to see both of them clearly and did so. Upon arrival at the

designated address, he turned on the dome light of the taxicab and, by its light, saw both of his passengers clearly. They were the two defendants. They refused to get out of the cab and ordered Cook to drive on, which he did. The passenger in the back seat, identified by Cook as Pauling, had a scar over his eye and was wearing a string through a hole in his ear. Pauling sat in the back seat of the cab and Banks sat beside the driver on the front seat. As Cook proceeded on from the originally designated destination, pursuant to the direction of the defendants, "Pauling throwed the gun" to the back of Cook's head and held it there, instructing Cook to stop and turn off the lights of the taxicab. Pauling threatened to blow Cook's brains out if he did not comply. Cook stopped the vehicle and Banks took Cook's billfold and money from his jacket pocket. The two defendants then left the taxicab, instructing Cook to drive on. Immediately thereafter, Cook, using the two-way radio on his taxicab, reported the robbery to the taxicab dispatcher who, in turn, radioed the police. Cook remained within a block of the scene of the robbery until police officers arrived approximately six minutes later. Some seven or eight minutes after the robbery, Cook, in the vehicle of the police officers who came to the scene, drove to the parking lot of a supermarket, about one block from the scene of the robbery, where other police officers, acting upon the description of the robbers so given by radio, had apprehended Pauling as a suspect. Cook immediately identified Pauling as one of the two robbers and Pauling was taken to jail.

Cook also testified: On 1 February, he identified Banks as the other robber in a lineup of five colored men, of approximately the same age and size, at the police station. At the request of the police, Cook had previously viewed another lineup, which did not include Banks, and had then told the police that neither of the men who had robbed him was present in that lineup.

With reference to the weapon used by the robbers, Cook testified: "The gun they held me up with had white handles on it. The gun had been pretty well worn. You know how it is when you carry it in your pocket without a holster, but the gun had white handles on it. The boy in the back — Pauling — was holding the gun on the back of my head. He had the handle in his hand, but when he went to get out of the car I could see enough of the gun to see that the handles was [*sic*] white." He positively identified both defendants in the courtroom as the men who robbed him.

One of the arresting officers testified that Pauling, at the time of his arrest on the night of the robbery, had a piece of string through his left ear and the same scar on his face which the officer and Cook pointed out in the courtroom.

Each defendant testified in his own behalf, denying any participation in or knowledge of the alleged robbery. Each testified that at the time it was committed, according to the evidence of the State, the defendants were not together but each was in the presence of other persons at a location somewhat remote from the scene of the alleged robbery. Each defendant offered the testimony of a number of other witnesses who corroborated his alibi.

The defendants appealed jointly and assign as error the denial of their respective motions for judgment of nonsuit, contending that there was a material variance between the indictment and the proof in that the indictment alleged robbery with the use of a "pistol," whereas the evidence of the State is that the alleged robbers used a "gun." The defendants also assign as error certain portions of the charge to the jury and the failure of the court, when instructing the jury upon the lesser charge of common law robbery, to repeat the instruction concerning the contention of alibi which had been given by the court in connection with the charge of armed robbery.

*Attorney General Bruton and Staff Attorney Vanore for the State.*
*Lila Bellar and Fenton T. Erwin, Jr., for defendant appellants.*

PER CURIAM.  Since a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment, or of a lesser offense included therein, where there is a material variance between the allegations of the indictment and the proof, the defendants' motion for judgment of nonsuit should be sustained. *State v. Keziah,* 258 N.C. 52, 127 S.E. 2d 784.

It is obvious that in the present case, unless there was such a variance, the motion for nonsuit was properly denied. It is equally obvious that there was no such variance. The word "gun" is a generic term including a variety of firearms ranging in size and shape from the largest cannon to the smallest pistol. It is a matter of common knowledge that in everyday speech, on television programs and elsewhere, a pistol is frequently called a "gun." That this is not a misuse of the term "gun," see: *State v. Barnes,* 253 N.C. 711, 117 S.E. 2d 849; *State v. Christ,* 189 Iowa 474, 177 N.W. 54; Black's Law Dictionary; Webster's New International Dictionary, 2d Ed.

In common speech, the term "gunslinger" and the phrase "throwing a gun" call to the ordinary mind the use of a pistol. The victim of the alleged robbery in the present case testified that Pauling "throwed a gun" to the back of Cook's head. He then testified that this "gun" had white handles, that it was "pretty well worn" as "when you carry it in your pocket without the holster," and Paul-

ing "had the handle in his hand, but when he went to get out of the car I could see enough of the gun to see that the handles was [*sic*] white." These could be no doubt in the mind of any reasonable person that the weapon so referred to by Cook was a pistol. For this reason, there was no error in the denial of the defendants' motions for judgment of nonsuit, or in the court's statement in the charge to the jury that the State had produced evidence tending to show the use of a "pistol" or in the instruction that "a pistol is a firearm within the meaning of" the statute dealing with robbery by the use of firearms.

The trial judge reviewed, fairly and adequately, the evidence presented by the defendants in support of their respective claims of alibi. He charged the jury correctly and adequately as to the nature of the claim of alibi and as to the burden of proof when that claim is presented by a defendant charged with crime. While this instruction was given in that portion of the charge concerned with the offense of armed robbery and the court then proceeded to instruct the jury as to the lesser offense of common law robbery without repeating the instruction concerning alibi, this was not error. Obviously, if the jury concluded that the defendants should be acquitted of the charge of armed robbery on the ground that they were not present when the offense was committed, it would acquit them of common law robbery in connection with the same transaction. The jury could not have misunderstood the significance of the court's instruction on this point.

The remaining exceptions to the charge of the court are equally without merit.

No error.